UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL A. MCKEEHAN,

                Petitioner,              **DECISION AND ORDER**
                                             No. 05-CV-0454

        -vs-

ANTHONY ZON, Superintendent of the
Wende Correctional Facility,

                Respondent.
_____


I.   **INTRODUCTION**

      Petitioner Michael McKeehan ("McKeehan" or "Petitioner"), who

is represented by counsel, filed a timely petition for a writ of

habeas corpus under 28 U.S.C. § 2254 challenging the

constitutionality of his custody.  Pursuant to a judgment after a

jury trial, entered January 3, 2000 in Steuben County Court,

Petitioner was convicted of Assault in the First Degree (N.Y. Penal

Law § 120.10(3)) and Endangering the Welfare of a Child (N.Y. Penal

Law § 260.10).

      For the reasons set forth below, the petition is denied.

II.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

     **A.**    **Factual Background**

      In late February 1999, Heather Kittl ("Kittl") left her home

in Wisconsin with her 10-month old daughter and traveled to

New York to meet Petitioner, with whom she interacted via computer

and telephone since meeting him in an internet chat room the

previous month.  Trial Transcript ("T.") 208-210.  During her first week in New York, Kittl and her daughter stayed with Petitioner.  At the end of that week, Kittl noticed bumps and bruises on her daughter's head and face.  After asking Petitioner if he knew anything about the injuries, he told her the child probably bumped herself in the night.  T. 217, 218, 223.

During Kittl's stay, she and Petitioner slept upstairs at Petitioner's house and Kittl's daughter slept on a couch downstairs.  T. 220-223.  Kittl stayed with Petitioner for approximately four weeks total, during which Petitioner would often wake up early in the morning (between midnight and 1:00 a.m.) and leave the upstairs bedroom for four or five hours.  T. 223, 225.  During the second and third weeks of her stay with Petitioner, Kittl noticed swelling on her daughter's head and that the child's eyes started to swell shut.  T. 224.  Kittl denied hitting her daughter or that she caused the injuries, but testified that she observed Petitioner "cuff" her daughter "on the back of her head openhanded" a number of times.  T. 254-255, 262.  Kittl also said that Petitioner was physically abusive towards her [Kittl] on two occasions, and threatened to kill her and her daughter and bury them in the back yard.  T. 226-29, 243-45.

On March 21, 1999, Petitioner awakened Kittl and told her that something was wrong with her daughter.  When Kittl went downstairs to check on her, she noticed that her daughter was bruised, her

head was swollen, her eyes were swollen shut and she was limp.  T. 248-249.  Kittl and Petitioner revived the girl with a cold bath. T. 249-250.  A few days later on March 23, Kittl slept downstairs on the couch with her daughter.  Id.  Petitioner came downstairs around 2:30 a.m. and told Kittl to leave her daughter on the couch and come upstairs to bed.  T. 250-251.  Petitioner woke up around 5:30 a.m., went downstairs, picked up Kittl's daughter and brought her to the upstairs bed.  He then went back downstairs.  T. 251. Kittl laid her daughter in the middle of the upstairs bed and went downstairs to prepare her a bottle and, at the same time, Petitioner proceeded back upstairs.  Id.  When Kittl approached the bottom of the stairs to give her daughter the bottle, she observed Petitioner grab her daughter by the arm, and throw her backwards onto her back saying, "she's doing it again," referring to the fact that the girl went limp.  Id.

Petitioner said he did not know what happened to her, but finally agreed to call the paramedics after Kittl asked him to do so three times.  Id.  He insisted that Kittl tell the paramedics that her daughter fell off the couch and hit her head on the coffee table, and to be sure to stick to that story.  T. 252-253.  Upon arrival, the paramedics classified the situation as life threatening and transferred Kittl's daughter to Corning Hospital where a nurse noted that she suffered "massive trauma of her face

and head" and was oxygen-deprived and hypothermic.  T. 305-6, 321-322.

Her severe condition required her to be transported to Strong Memorial Hospital in Rochester, New York where she underwent emergency surgery to correct internal bleeding in her skull that caused swelling and pressure on her brain and impaired her ability to breath.  T. 359-361.  The treating doctor testified that, in his opinion, the child's injuries could not have been caused by a fall from the couch and bumping her head on the coffee table, but were more consistent with several beatings of considerable force.  T. 363, 364.  The doctor opined that her injuries were more consistent with injuries from a motor vehicle accident or a fall from a third or fourth story building.[1]  T. 363-364.

**B.    Petitioner's Arrest**

On March 23, 1999, Steuben County Police Investigator, Mark Procopio, reported to the parking lot of a Wegman's supermarket in Painted Post, New York, in response to a call that a child was being transported by helicopter from the parking lot to Strong

---

[1]The doctor testified that the treating physicians noticed subdural hematomas, or "areas of bleeding" and blood clots, on the child's brain.  One clot in particular, located on the right side of the brain, was "fairly large."  T. 359.  After surgery, the doctors confirmed that there was "old" and "new" blood on the child's brain indicating that she suffered injuries at different points in time.  T.  360, 370.  Additionally, the doctor noted that the pressure on the child's brain was pushing her brain "down through the bony cavity" or the "hole in the bottom of the skull" on which the brain normally sits.  T. 359-360.

Memorial Hospital in Rochester, New York.  <u>Huntley</u> Hearing
("H.H.___") 14-15.[2]  Initially, Procopio interviewed Petitioner at
the scene to determine what happened to the child, and asked
Petitioner if he would return with him to the Painted Post Police
Barracks.  Petitioner was not under arrest.  H.H. 15-17, 45. Given
the option of riding with the officer or driving himself to the
station, Petitioner chose to ride with Procopio.  H.H. 17.

Procopio and Petitioner (who was unrestrained) went to an
empty office at the station.  H.H. 17-18.  Procopio informed
Petitioner that he wanted to interview him because the doctors said
the child's injuries were inconsistent with the initial account of
how she was injured.  H.H. 19.  Procopio started the interview at
about 8:44 a.m. and continued until about 12:20 p.m., during which
time he repeatedly asked Petitioner if he was hungry, thirsty,
needed to use the bathroom, or wanted or needed to leave.  H.H. 20-
23, 30.  Petitioner was given water and bathroom breaks but he
never asked to leave or speak to an attorney.  H.H. 20-23.  Around
12:20 p.m. Investigator Alan Morse joined the interview, at which
point Procopio told Petitioner he did not have to stay and asked
him if he wanted an attorney or lunch, but Petitioner declined.
H.H. 30.

---

[2] <u>People v. Huntley</u>, 15 N.Y.2d 72 (1965)(requiring trial
courts to conduct a pre-trial hearing to determine the
voluntariness of a defendant's statements to be used as evidence
at trial.)

Throughout the interview, Petitioner insisted that Kittl's daughter suffered her injuries by falling off the couch and hitting her head on the coffee table. H.H. 20; T. 333, 335. However, later that afternoon, he admitted to "tapping" the girl on her head. H.H. 26, 48. Both Petitioner (at Procopio's request) and Procopio tapped the table and the wall to determine how hard Petitioner had "tapped" the girl. H.H. 26, 35-36. Petitioner tapped the table lightly, but Investigator Procopio told Petitioner that such a contact would not leave a mark, and asked him if he ever hit her any harder. H.H. 28. Petitioner then hit the table a little harder. Id. Investigator Procopio hit the wall hard and asked Petitioner if he hit the girl in that way. Id. Petitioner acknowledged it was in between the intensity he tapped the table and the force used by Procopio to hit the wall. Id.

Immediately following this exchange, Investigator Morse gave Petitioner Miranda warnings, and Petitioner stated that he understood his rights. Id. During the next hour, Morse prepared a written statement, which Petitioner read and signed. H.H. 26, 28, 37, 48-54. Petitioner then commented to another officer who was sitting nearby, "what's the big deal, so I beat the baby." H.H. 9. Petitioner was later arrested at approximately 6:00 p.m.

C.  **Petitioner's Trial**

On October 29, 1999, following a jury trial, Petitioner was convicted of Assault in the First Degree and Endangering the

Welfare of a Child for the injuries he inflicted upon Kittl's daughter, and was sentenced to a determinate term of twenty years on January 3, 2000. Sentencing Tr. 15-16. He appealed his conviction to the Appellate division, Fourth Department, claiming that: (1) the trial court erred in allowing testimony of an uncharged prior bad act; (2) the evidence was insufficient as a matter of law and the verdict was against the weight of the evidence with respect to the assault charge; (3) the depraved indifference section of the assault statute under which he was charged was unconstitutionally vague; (4) the court erred in not instructing the jury regarding the voluntariness of statements petitioner made to the police; (5) the oral and written statements made by Petitioner to the police should have been suppressed; and (6) the sentence was unduly harsh and excessive. Resp't Ex. A.[3] The conviction was unanimously affirmed, <u>People v. McKeehan</u>, 2 A.D.3d 1421 (4th Dept. 2003), <u>lv. denied</u>, 3 N.Y.3d 644 (2004).

McKeehan then filed the instant petition for habeas relief ("Pet.") in which he made the following claims: (1) that his conviction resulted from a statement taken from him in violation of his constitutional protection against self-incrimination; (2) ineffective assistance of trial and appellate counsel; (3) the

---

[3]The exhibits related to respondent's answer and memorandum of law in opposition to the habeas petition are located at Docket No. 21, Attach. No. 1, and are hereinafter referenced as "Resp't Ex.", followed by the appropriate letter.

trial court erred in admitting testimony from the victim's mother concerning alleged incidences of violence and threatened violence against the mother; (4) the verdict was against the weight of the evidence; (5) the statutory provision upon which the conviction rests is unconstitutionally vague; (6) the trial court's sentence violated petitioner's right to demand a jury trial and (7) the trial court's failure to memorialize pre-trial plea negotiations violated Petitioner's constitutional rights. Pet. ¶22(a-f)(Docket No. 1). Petitioner's claims that he received ineffective assistance of trial and appellate counsel were not exhausted at the state level at the time he filed his habeas petition. This Court dismissed Petitioner's unexhausted claims without prejudice and granted a stay for the exhausted claims so the state court could hear and decide the unexhausted issues. (Docket No. 11).

Subsequently, Petitioner filed a Criminal Procedure Law ("CPL") § 440.10 motion to vacate the judgment in Steuben County Court, arguing ineffective assistance of trial counsel. Resp't Ex. I. The county court denied the motion on the merits, and the Appellate Division denied leave to appeal. Resp't Ex. K, P. Petitioner also filed a writ of error coram nobis in the Appellate Division claiming ineffective assistance of appellate counsel. Resp't Ex. Q. On September 30, 2005, the Appellate Division denied the motion on the merits and permission to appeal to the New York State Court of Appeals was denied. Resp't Ex. R, T.

Since Petitioner exhausted his claims of ineffective assistance of trial and appellate counsel in state court, this Court lifted the previously ordered stay, reinstated the dismissed claims, and ordered respondent to serve an answer and memorandum of law addressing the issues raised by Petitioner. (Docket No. 14).

## III. GENERAL PRINCIPLES APPLICABLE TO HABEAS REVIEW

### A. The Standard of Review for Habeas Corpus Petitions

In reviewing a state prisoner's habeas corpus petition pursuant to 28 U.S.C. § 2254, federal district courts make an independent determination as to whether the petitioner is in custody in violation of his rights under the Constitution or any laws and treaties of the United States. Coleman v. Thompson, 501 U.S. 722, 730 (1991), reh'g denied, 501 U.S. 1277 (1991). A federal court does not function as an appellate court to review matters within the jurisdiction of the state, or to review rulings and decisions of state trial and appellate courts when it reviews a state prisoner's habeas petition. Rather, the court only determines whether the proceedings in state court amount to a violation of federal constitutional rights. Id. Federal review of state court convictions is limited to federal constitutional errors which deny criminal defendants the right to a fundamentally fair trial. Cupp v. Naughton, 414 U.S. 141, 144 (1973).

When reviewing habeas claims of petitioner's who were convicted in state court, the federal habeas court may not grant relief unless the state court decision was:

> contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or ...
>
> based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2).

"Clearly established" federal law "refers to the holdings, as opposed to the dicta of [the U.S. Supreme] Court's decisions as of the time of the relevant state-court decisions." <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000). State court decisions are contrary to clearly established federal law if the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" that of the Supreme Court. <u>Id.</u> at 405.

A state court decision is an "unreasonable application" of Supreme Court precedent if it:

> Identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts ... [or] unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

<u>Id.</u> at 407.  This standard applies even if the state court decision was a summary affirmance of the conviction that did not explicitly reject the Federal claim, as long as the decision necessarily determined the claim.  <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 312 (2d Cir. 2001).

### B.    The Exhaustion Requirement

The habeas statute provides that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  A habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established review process."  <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).  Typically, this means that federal habeas claims must have been included in both the petitioner's appeal to the state's intermediate appellate court and in an application for permission to appeal to the state's highest court.  <u>Id.</u> at 848.  The federal court must assess whether the petitioner has "properly exhausted" his state remedies by "fairly present[ing]," <u>id.</u>, to the state court "both the factual and legal premises of the claim he asserts in federal court."  <u>Daye v. Attorney General of New York</u>, 696 F.2d 186, 191 (2d Cir. 1982) (<em>en banc</em>); <u>accord</u>  <u>Jones v. Vacco</u>, 126 F.3d 408, 413 (2d Cir. 1997).

Failure to exhaust may be excused, however, if the petitioner shows cause and prejudice. Wainright v. Sykes, 433 U.S. 72, 87-88 (1977); Murray v. Carrier, 477 U.S. 478, 485 (1996). For example, "[w]hen a petitioner has not properly presented his claim to a state court for consideration on the merits, but 'it is clear that the state court would hold the claim procedurally barred,' a federal habeas court need not require that the claim be presented to a state court." Lloyd v. Walker, 771 F.Supp. 570, 574 (quoting Harris v. Reed, 489 U.S. 255, 263 n. 9 (1989)); see also Grey v. Hoke, 933 F.2d 117, 119, 120-21 (2d Cir. 1991).

If the petitioner is procedurally barred from asserting the claim in state court, then the claim is deemed exhausted, but procedurally defaulted for habeas purposes. For federal courts to hear a procedurally defaulted claim on habeas review, "the petitioner must show cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." Aparicio v. Artuz, 269 F.3d 78, 90 (2nd Cir. 2001)(citing Coleman, 501 U.S. at 748-50).

**C. The Independent and Adequate State Grounds Doctrine**

"Under the independent and adequate state grounds doctrine, the Supreme Court 'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and

adequate to support the judgment.'" <u>Cotto v. Herbert</u>, 331 F.3d 217, 238 (2d Cir. 2003) (quoting <u>Coleman</u>, 501 U.S. at 729). "'This rule applies whether the state law ground is substantive or procedural.'" <u>Id.</u> A procedural bar is "adequate" if it is based on a rule that is "'firmly established and regularly followed' by the state in question." <u>Garcia v. Lewis</u>, 188 F.3d 71, 77 (2d Cir. 1999) (quoting <u>Ford v. Georgia</u>, 498 U.S. 411, 423-24 (1991)). Whether application of the procedural rule is "firmly established and regularly followed" must be judged in the context of "the specific circumstances presented in the case...." <u>Cotto</u>, 331 F.3d at 240 (citing <u>Lee v. Kemna</u>, 534 U.S. 362, 386-387 (2002)); <u>Hathorn v. Lovorn</u>, 457 U.S. 255, 263 (1982)("State courts may not avoid deciding federal issues by invoking procedural rules that they do not apply evenhandedly to all similar claims.")

Further, "federal courts may not review state court decisions that rest on an adequate and independent state procedural default unless petitioner can show both cause and prejudice or a fundamental miscarriage of justice." <u>Fama v. Comm'r of Corr. Servs.</u>, 235 F.3d 804, 809 (2d Cir. 2000) (citing <u>Coleman</u>, 501 U.S. at 749-50; <u>Harris v. Reed</u>, 489 U.S. at 262. In order to bar federal review, "[t]he state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." <u>Harris</u>, 489 U.S. at 261-62 (internal quotation marks and citation omitted). "Because it can be 'difficult to determine if

the state law discussion is truly an independent basis for decision or merely a passing reference,' <u>Coleman</u>, 501 U.S. at 732, such reliance on state law must be 'clear from the face of the opinion[,]' <u>Id.</u> at 735." <u>Fama</u>, 235 F.3d at 809.

## IV. MERITS OF THE PETITION

### A. 5th Amendment violations

Petitioner claims, as he did on direct appeal, that certain statements he made to the police were obtained in violation of his Fifth Amendment right against self-incrimination. Specifically, Petitioner asserts that he was questioned for an extensive period of time at the New York State Police Barracks, in a custodial setting, without being advised of his <u>Miranda</u> rights. Pet. ¶12(a).

The Appellate Division found that the Petitioner was not in custody when certain initial statements were made, and that the remaining contested statements were made after Petitioner waived his <u>Miranda</u> rights. Specifically, the Appellate Division held: (1) that during Petitioner's initial pre-<u>Miranda</u> interview, there was nothing in the record "to indicate that he was under arrest or restrained from leaving in any way, that the atmosphere was hostile, that he requested an attorney or asked that questioning cease, or that he did not want to cooperate with the investigators before he was advised of his <u>Miranda</u> rights []"; and (2) that "[a]fter defendant was advised of his <u>Miranda</u> rights, defendant waived those rights and told investigators that he would continue

-14-

to answer questions." People v. McKeehan, 2 A.D.3d at 1422. This Court finds, for the following reasons, that the Appellate Division's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

It is well established that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda v. Arizona, 384 U.S. 436, 444 (1966). Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. In addition, courts should evaluate the characteristics of the accused, the conditions of the interrogation, and the conduct of law enforcement, to ensure that the accused's statements were voluntary. Green v. Scully, 850 F2d 894, 901 (2nd Cir. 1988), cert. denied, 488 U.S. 945 (1988).

The record reveals that prior to Petitioner receiving his Miranda rights, Investigator Procopio asked Petitioner if he would accompany him to the police barracks and was even given the option to drive himself. The Huntley hearing revealed that Procopio escorted petitioner, unrestrained, to an empty office at the police station with no other officers present. Procopio informed Petitioner that he wanted to interview him because the doctors said

the child's injuries were not consistent with Petitioner's account of how she was injured, and repeatedly asked if he was hungry, thirsty, needed to use the bathroom, or wanted or needed to leave. Petitioner was given water and bathroom breaks but he never asked to leave or speak to an attorney. Later in the afternoon, Procopio told Petitioner he did not have to stay and asked him if he wanted an attorney or lunch, but Petitioner declined. As the interview questions became more direct and the Petitioner's responses became more incriminating, Petitioner received Miranda warnings and acknowledged that he understood those rights. Subsequently, Petitioner waived those rights and agreed to continue talking to the police before signing his written statement on the matter. Finally, Petitioner's statement that, "what's the big deal, so I beat the baby", was initiated by Petitioner and not the result of police questioning. See, e.g., People v. Gonzales, 75 N.Y.2d 938 (1990) (admission of a spontaneous statement does not violate a defendant's constitutional rights). In any event, Petitioner made that statement after expressly waiving his Miranda rights. This Court finds that Petitioner's statements were voluntary and his privilege against self incrimination was not violated as he was properly advised of his Miranda rights.

Accordingly, the Court finds the Appellate Division's dismissal of this claim was not contrary to or an unreasonable

application of clearly established federal law.  See 28 U.S.C. § 2254(d).  Habeas relief is therefore denied on this ground.

**B.    Ineffective Assistance of Counsel Claims**
**1.    Ineffective assistance of trial counsel**

Petitioner claims he was deprived the effective assistance of trial counsel on the following grounds:  (a) trial counsel failed to object to the admission of Petitioner's statements to police into evidence and thus failed to preserve the issue for appellate review; and (b) his attorney was disbarred on an unrelated matter after Petitioner's trial. Pet. ¶12(b).  Petitioner raised this claim in state court in a CPL § 440.10 motion, which was summarily denied on the merits. Resp't Ex. I, K, P.

To make an ineffective assistance of counsel claim, Petitioner must show that counsel's performance was deficient, and also that the deficient performance prejudiced the defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984); Bloomer v. United States, 162 F.3d 187, 192 (2d Cir. 1998); Tyson v. Keane, 159 F.3d 732, 736 (2d Cir. 1998), cert. denied, 526 U.S. 1027 (1999).  In determining whether counsel's performance was deficient, Petitioner "must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688; Bloomer, 162 F.3d at 192.  "A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption

that, under the circumstances, the challenged action might be considered sound trial strategy." <u>Strickland</u>, 466 U.S. at 689. To show prejudice, a habeas petitioner must demonstrate "that there is a 'reasonable probability' that, but for the deficiency, the outcome ... would have been different [.]" <u>Mckee v. U.S.</u>, 167 F.3d 103, 106 (2d Cir. 1999) (quoting <u>Strickland</u>, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the [trial's] outcome." <u>Strickland</u>, 466 U.S. at 694.

### a. Trial Counsel's Failure to Object

Petitioner contends that trial counsel failed to object to the admission of Petitioner's statements made to police which may have been necessary to preserve that issue. Pet. ¶22(b). Although Petitioner's trial counsel did not object to the introduction of statements he made to police or raise issues of voluntariness at the trial, his counsel did object to the admission of Petitioner's statements into evidence at the pre-trial <u>Huntley</u> hearing. Counsel argued against admitting Petitioner's statements on the grounds that they were made involuntarily and without advising petitioner of his <u>Miranda</u> rights. Counsel also extensively cross-examined each of the prosecution's witnesses who testified at the <u>Huntley</u> hearing. At the hearing's conclusion, the court determined that the statements were voluntary and admissible. That decision was addressed on the merits and upheld on direct appeal to the Appellate Division. <u>See</u> <u>People v. McKeehan</u>, 2 A.D.3d at 1422.

Petitioner's attorney was not ineffective for failing to make a pointless objection to the admission of petitioner's statements which had already been deemed admissible by the court. <u>See</u> <u>Duncan v. Griener</u>, No. 97 Civ. 8754(JGK), 1999 WL 20890 at *10 (S.D.N.Y. Jan. 19, 1999) (where trial counsel's objection "would have been fruitless ... the failure to so object is not evidence of ineffective assistance of counsel"). Therefore, this Court finds that Petitioner's claim is without merit because failing to raise a question as to the voluntariness or admissibility of the statements at the trial did not prejudice the Petitioner's defense as required by <u>Strickland</u>.

### b. Trial Counsel's Subsequent Disbarment

Petitioner also claims he received ineffective assistance because his trial counsel was disbarred, on an unrelated matter, three years after Petitioner was sentenced. <u>In re Balok</u>, 2 A.D.3d 887 (3rd Dept. 2003). Petitioner's defense counsel was disbarred for converting client funds, and not because of any alleged incompetence connected with Petitioner's representation. <u>Id.</u> As respondent points out, there is no evidence of any disciplinary action against trial counsel for his performance in Petitioner's case. <u>Id.</u>; Resp't Mem. 22. Additionally, there is no evidence that counsel's disbarment prejudiced the Petitioner. Thus, this claim fails to meet either part of the <u>Strickland</u> test.

For the reasons stated above, the state court decision denying Petitioners CPL § 440.10 motion to vacate the judgment based on the ineffective assistance of trial counsel was not contrary to, nor did it involve an unreasonable application of, clearly established Federal law as stated by the U.S. Supreme Court. Therefore, habeas relief is unavailable on this ground and the claim is denied.

### 2. Ineffective assistance of appellate counsel

Petitioner claims in his habeas petition that he received ineffective assistance of appellate counsel because his appellate attorney failed to raise the issue of ineffective assistance of trial counsel. Pet. ¶12(b). Petitioner raised this claim in state court in a writ of error coram nobis filed in the Appellate Division. The Appellate Division summarily denied the motion on the merits, and permission to appeal to the New York State Court of Appeals was denied. Resp't Ex. R, T.

The Strickland standard for ineffective assistance of counsel applies equally to both trial and appellate counsel. See Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994), cert. denied, 513 U.S. 820 (1994). Further, appellate counsel does not have a constitutional duty to raise and argue every non-frivolous issue requested by a defendant. Jones v. Barnes, 463 U.S. 745, 751 (1983). Therefore, counsel had no obligation to raise a claim that could properly be deemed frivolous.

Here, Petitioner's appellate counsel filed a 47-page brief in which she argued six main claims containing numerous citations to both trial transcripts and relevant case law. The petitioner's argument, that the ineffective assistance of trial counsel claim should have been argued, is meritless. Failure to raise a meritless issue could not have prejudiced the Petitioner. See Aparacio v. Artuz, 269 F.3d 78, 99 (2d Cir. 2001). The Court finds that the Appellate Division's decision to deny the motion for a writ of error coram nobis was not contrary to, nor did it involve an unreasonable application of, clearly established Federal law. Therefore, habeas relief is unavailable on this ground and the claim is denied.

### C. Erroneous Evidentiary Rulings

Petitioner claims, as he did on direct appeal, that the trial court erred in admitting testimony from Heather Kittl, the child's mother, that Petitioner had previously physically abused her and threatened to kill her. Pet. ¶22(c). He asserts that this evidence of an uncharged crime was unfairly prejudicial. Id.

In general, a state court's evidentiary rulings, even if erroneous under state law, do not present constitutional issues cognizable in a habeas corpus petition. Crane v. Kentucky, 476 U.S. 683, 689-690 (1986). For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have

denied him a fair trial.  United States v. Agurs*,* 427 U.S. 97, 108 (1976).  Here, the Appellate Division denied this claim finding that the trial court's evidentiary rulings were not erroneous and that "[t]here is ample case law to support the proposition that uncharged crime evidence may be used to support testimony that otherwise might be unbelievable or suspect."  McKeehan, 2 A.D.3d 1421-1422 (quoting People v. Steinberg, 170 A.D.2d 50, 74 (1991) aff'd 79 N.Y. 2d 673 (1992)).  Because there were no clear evidentiary errors of state law as determined by the state court, petitioner has not alleged an error that gives rise to a constitutional infirmity. Habeas review is therefore precluded as to these claims.  See Estelle v. McGuire*,* 502 U.S. 62, 68 (1991).

**D.  Weight of the Evidence**

Petitioner claims, as he did on direct appeal, that his conviction is against the weight of the evidence.  Pet. ¶22(d). Specifically, he asserts that his statement that he "tapped" the child, and the medical professionals' opinions that the child's injuries were the sort typically caused by a fall from more than two stories high, or a motor vehicle accident, do not support his conviction for assault.  Id.  Such claims are not cognizable on habeas review.  See Jones v. Artus, 615 F.Supp.2d 77 (W.D.N.Y. 2009); Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the

United States.").

Weight of the evidence arguments present "only a state law claim grounded in the criminal procedure statute" and are thus not cognizable on habeas review. <u>Jones</u>, 615 F.Supp.2d at 85. Because this claim does not present an issue for which habeas relief can be given, it must be dismissed.

### E. Unconstitutionally Vague Statute

Petitioner also asserted that the statutory provision upon which the conviction rests is unconstitutionally vague. Pet. ¶22(e). The Appellate Division held that the issue was unpreserved for appellate review and that the requisite notice was not given to the Attorney General. <u>McKeehan</u>, 2 A.D.3d at 1422 (citing C.P.L. § 470.05(2) and N.Y. Executive Law § 71). The issue is therefore procedurally barred.

Since the Appellate Division's decision rests on an independent and adequate state ground, the claim is barred. <u>Fama v. Comm'r of Corr. Servs.</u>, 235 F.3d at 809 (citing <u>Coleman</u>, 501 U.S. at 749-50); <u>Harris v. Reed</u>, 489 U.S. at 262. Petitioner has not demonstrated cause for his failure to make a timely objection nor has he shown any resulting prejudice. <u>Id</u>. He has also not demonstrated that failure to consider the claims will result in a fundamental miscarriage of justice. <u>Id</u>. Therefore, this Court may not review the merits of McKeehan's challenge to the statute's constitutionality. Accordingly, ground five is dismissed.

**F.  Right to a Jury Trial**

Petitioner's next claim is that the trial court's sentence violated his right to demand a jury trial.  Pet. ¶22(f). Specifically, Petitioner claims that the prosecution offered him a determinate sentence of eight years provided he plead guilty to the charge.  Id.  He claims that the 20-year determinate sentence he received at trial penalized him for exercising his right to proceed to trial.  Id.  However, Petitioner failed to assert this claim in the state court review process and raises this ground for the first time in his habeas petition.  Petitioner has not exhausted this claim and there are still available state court remedies for this claim.  NY CPL § 440.20(1)

Although Petitioner has not exhausted this claim, 28 U.S.C. § 2254(b)(2) carves out an exception to the exhaustion requirements by providing that an "application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state." 28 U.S.C. § 2254(b)(2); accord e.g., Rhines v. Weber, 544 U.S. 269, 277 (2005)(holding that a "district court would abuse its discretion if it were to grant [petitioners] a stay when [their] unexhausted claims are plainly meritless.").

The Second Circuit has not yet articulated a standard for determining when unexhausted claims should be denied on the merits, but the majority of district court decisions in this

Circuit have embraced a "patently frivolous" test for dismissing unexhausted claims. Naranjo v. Filion, No. 02Civ.5449, 2003 WL 1900867, at *8 (S.D.N.Y. Apr. 16, 2003). A minority of courts in this Circuit have expressed the test as whether "'it is perfectly clear that the [petitioner] does not raise even a colorable federal claim,' in which case the Court should dismiss the unexhausted claim on the merits (or rather the clear lack thereof)." Id. (quoting Hernandez v. Lord, 00Civ.2306, 2000 WL 1010975, at *4-5, n. 8 (S.D.N.Y. July 21, 2000)). As discussed below, petitioner's claim fails either test, so it is appropriate for the Court to rely upon 28 U.S.C. § 2254(b)(2) in order to deny this claim, and thus deny the habeas petition entirely.

Petitioner's "position is that the sentencing court imposed a sentence that vindictively retaliated against him for exercising his right to take the case to trial and thereby committed constitutional error." Bailey v. Ercole, No. 06Civ. 5811, 2007 WL 4707738, at *13 (S.D.N.Y. Aug. 17, 2007) ("When a sentence imposed at the conclusion of a trial is greater than the sentence a prosecutor had been willing to recommend as part of a plea offer, the disparity does not, without more, establish vindictiveness."); see also Alabama v. Smith, 490 U.S. 794, 801-03 (1989) (holding that there is no presumption of vindictiveness where a sentence imposed after a trial is greater than a sentence imposed after a guilty plea). In McKeehan's case, there was a 12-

year difference between the length of the sentence he was offered pursuant to the pre-trial plea offer and the sentence he received after conviction. However, this disparity alone does not make out a claim of actual vindictiveness. Moreover, there is no indication in the record that the sentencing court based the length of the sentence on McKeehan's refusal of the plea offer. The mere fact that the judge, following conviction, imposed a sentence on McKeehan "approaching the maximum legal limit does not, in itself, demonstrate actual vindictiveness." Naranjo v. Filion, 2003 WL 1900867, at *10 (citing, Corbitt v. New Jersey, 439 U.S. 212, 219 (1978).

This Court agrees with the above-cited authorities and accordingly, finds that Petitioner's vindictive sentencing claim does not provide a basis for granting habeas relief. Accord e.g., Bailey v. Artuz, No. 94 Civ.1240, 1995 WL 684057 at *2 (N.D.N.Y. Nov. 15, 1995). Therefore, this claim is dismissed and relief is denied.

### G. Pre-trial Negotiations

Petitioner also claims that the trial court failed to memorialize pre-trial negotiations thus violating Petitioner's constitutional rights. Pet. ¶22(f). Petitioner failed to assert this claim in the state court review process and raises this ground for the first time in his petition for habeas relief. While Petitioner has not formally exhausted this claim by raising

it in the state courts, it is deemed exhausted for the purposes of habeas review.  Since Petitioner did not argue or assert this claim in the state courts during his appeal process, Petitioner can no longer raise the issue in state court and the claim is deemed exhausted and procedurally defaulted.  For a procedurally defaulted claim to be heard by a federal court on habeas review, "the petitioner must show cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)."  <u>Aparicio v. Artuz</u>, 269 F.3d 78, 90 (2nd Cir. 2001)(citing <u>Coleman</u>, 501 U.S. at 748-50).  Petitioner made no such showing in his habeas petition, and therefore, his claim is dismissed and no habeas relief may be given on this ground.

## V.   CONCLUSION

For the reasons stated above, Michael McKeehan's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.  Because petitioner failed to make a substantial showing of a denial of a constitutional right, the court declines to issue a certificate of appealability. See 28 U.S.C. § 2253.

**IT IS SO ORDERED**

S/Michael A. Telesca
_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    October 20, 2009
          Rochester, New York.